Paula RICHTER, on behalf of herself
and on behalf of all others similarly
situated, Plaintiff, and

Amy Elliott, Plaintiff/Intervenor,

v.

Otis R. BOWEN, Secretary of Health and
Human Services, and Nancy Norman,
Commissioner of the Iowa Department
of Human Services, Defendants.

No. C 85–4151.

United States District Court,
N.D. Iowa, W.D.

July 31, 1987.

Thomas Krause, Sioux City, Iowa, Martin J. Ozga, Des Moines, Iowa, for plaintiffs.

Daniel Hart, Des Moines, Iowa, Madeline Nesse, Dept. of Justice, Washington, D.C., for defendants.

## ORDER

DONALD E. O'BRIEN, Chief Judge.

This matter comes to the Court on plaintiffs' motion for summary judgment, Defendant Norman's motion for summary judgment against Defendant Bowen on the cross-claim, the plaintiffs' motions for class certification, and more recent motions to dismiss filed by the defendants.[1] Because the motions to dismiss rest upon claims that the case is now moot, the Court believes it is necessary to address those motions first in order to determine whether it continues to have jurisdiction over this case. For the reasons stated below, the Court grants the motions to dismiss with regard to all claims against Defendant Norman and denies the motions to dismiss with regard to all claims against Defendant Bowen. The Court further orders the plaintiffs to submit a proposed order certifying the plaintiff class, issuing a declaratory judgment against Bowen and ordering Bowen to issue notice to all members of the certified class.

This case involves the eligibility of a relatively narrow category of persons for benefits under the Aid to Families with Dependent Children program, 42 U.S.C. § 401, et seq. (1982). Since this action was filed, the rights of these persons have been changed by an act of Congress, an Eighth Circuit decision and several regulations. The substantive question underlying this action continues to be how participating states such as Iowa should decide which teenage mothers should be treated as members of their parents' families for purposes of calculating their financial need, and which should be evaluated without regard to their parents' income.[2] This question only arises with teenage mothers between their 18th and 19th birthdays who live with a parent or guardian. If a parent's income is "deemed" by the state to be available to a teenage mother and her dependent children, they are less likely to qualify for AFDC benefits.

The practice of "deeming" the income of dependent children's grandparents began with the passage of § 2640 of the Deficit Reduction Act of 1984, which was codified at 42 U.S.C. § 602(a)(39) (West Supp.1985). Under this statute, states were directed to borrow the test used to decide who is a "dependent child" and use it to decide which teenage mothers would be deemed to have access to their parents' income. In Iowa, children under the age of nineteen who are full-time students in a secondary school are considered "dependent children" and, conversely, eighteen-year-olds who are not enrolled in secondary schools are considered independent children. Thus, under the most reasonable reading of the 1984 statute, parental income should not have been deemed available to eighteen-year-old mothers not in school, and their chances of

[1.] The plaintiffs' First Amended and Substituted Complaint, submitted January 23, 1987, lists Paula Richter and Amy Elliott as class representatives, and describes the proposed class as "all present, past and future applicants or recipients of grants under the AFDC program in the State of Iowa who are or were 18 years of age; living with one or more parents or legal guardians; who have been or will be denied all or part of an AFDC grant because of the inclusion of the income or resources of the parent or parents with whom they reside in determining AFDC eligibility; and who are otherwise eligible for benefits under the AFDC program." Although the Court has not yet granted either of the plaintiffs' motions to certify a class, the Court will treat the plaintiffs as a class throughout this order for the sake of simplicity.

[2.] The Court recognizes that fathers as well as mothers may be eligible for AFDC benefits, and uses the term "teenage mother" for the sake of simplicity only. Any fathers who satisfy the requirements for class membership should be entitled to equal treatment.

becoming eligible for AFDC benefits should have thereby increased.

However, the Secretary of Health and Human Services enacted a regulation which effectively ordered states to treat all persons under nineteen as if their parents' income was available to them, regardless of school attendance. *See* 45 C.F.R. § 233.-20(a)(3)(XVIII) (1985). As a result, eighteen-year-olds not in school received less preferential treatment than a reasonable reading of the statute would require. In *Morrison v. Heckler*, 602 F.Supp. 1485 (D.Minn.1985), the Honorable Diana Murphy held that the Secretary misread the 1984 statute and invalidated the regulation. On April 11, 1986, the Eighth Circuit Court of Appeals affirmed this decision. *Morrison v. Heckler*, 787 F.2d 1285 (8th Cir. 1986).

■ Meanwhile, Congress again changed the law in a way which benefited eighteen-year-old teenage mothers. In § 1883(b)(3) of the Tax Reform Act of 1986, Congress went one step beyond the *Morrison* court's interpretation of the 1984 Act, and in a "technical correction" required that all eighteen-year-olds be treated as independent persons, without regard to their parents' income. As a result, eighteen-year-old mothers seeking benefits for periods of eligibility after 1986 have been governed by a standard from Congress which is more favorable than the standard which the plaintiffs asked this Court to require through an injunction. For this reason, the plaintiffs' request for prospective injunctive relief is now moot.

A question remains concerning the relief which this Court may give to those subjected to "deeming" while under nineteen before Congress changed the standard.[3] Because the plaintiffs have contended all along that such deeming was illegal when applied to eighteen-year-old mothers not in school, they are not entirely satisfied with the fact that eighteen-year-olds are no longer being deemed at all. They believe that they have past-due benefits coming to them and also contend that the 1986 Act was intended to apply retroactively in a way which would make any eighteen-year-old subjected to "deeming" prior to October 1986 entitled to past-due benefits.

The defendants, who filed their motions to dismiss the plaintiffs' entire action following the enactment of the 1986 Act, disagree. Their arguments rest in part on the Eleventh Amendment's restrictions on retrospective relief against states and in part upon § 1883(b)(11)(B) of the 1986 Act, a mysterious caveat which they contend extinguishes whatever statutory right not to be deemed the plaintiffs previously had between October 1984 and October 1986.

### Eleventh Amendment

■ Although the AFDC program was established by Congress, its benefits are only awarded by states. *Stevens v. Califano*, 448 F.Supp. 1313, 1329 (N.D.Ohio 1978), *aff'd sub nom., Califano v. Stevens*, 443 U.S. 901, 99 S.Ct. 3091, 61 L.Ed.2d 869 (1979). States are protected by the Eleventh Amendment from suits in federal court for retrospective relief such as awards for wrongfully withheld benefits. *Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974). Thus, it is clear that the Court cannot simply order Defendant Bowen or Defendant Norman to give the plaintiffs their past-due benefits even if they are entitled to them under federal law.

**3.** The Court requested the parties to supplement their briefs with decisions of other federal courts on these issues. Eight decisions have been received. *Viglione v. Bowen*, No. C86-242-D (D.N.H.1987); *Grimesy v. McMahon*, No. C 86-0947 (N.D.Cal.1986); *Williams v. Bowen*, No. 86-0420 (E.D.Va.1986) [Available on WESTLAW, DCT database]; *Topps v. Bowen*, No. 85-NC-0187W (D.Utah 1986) [Available on WESTLAW, DCT database]; *Driesens v. Bowen*, 670 F.Supp. 1360 (W.D.Mich.1986); *McCarthy v. Heintz*, No. H-85-597 (D.Conn.1986); *Kali v. Heckler*, 85-0488 (D.Hawaii 1985); Jimenez v. Cohen, No. 85-5282 (E.D. Pa.1986) [Available on WESTLAW, DCT database]. However, this case appears to be the first of the "deeming" cases in which the plaintiffs are seeking notice relief following the passage of the 1986 Act without an injunction already in place. thus, the other decisions provide very limited guidance.

However, *Edelman* does not leave federal courts without any means to assist citizens whose benefits have been wrongfully withheld by states. In *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), the Supreme Court permitted a federal court to require state officials to send "a mere explanatory notice to applicants advising them that there is a state administrative procedure available if they desire to have the state determine whether or not they may be eligible for past benefits." *Jordan v. Trainor,* 563 F.2d 873, 875 (7th Cir.1977). The plaintiffs in this case ask the Court to order that essentially the same type of notice be given to members of the class.

The power given to the Court in *Quern* is necessarily limited by the Supreme Court's more recent decision in *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). Justice Rehnquist, the author of *Quern,* wrote for the court in *Green* that the type of notice involved in *Quern* was permitted "because it was ancillary to a valid injunction previously granted and was sufficiently narrow to retain its character as a mere case management device." In *Green* the Supreme Court rejected the notice sought because it was not ancillary to any other form of relief, but was designed to be an independent remedy. While the plaintiffs argued that it was ancillary to their request for a declaratory judgment, the Supreme Court rejected this argument by noting that the plaintiffs would not be entitled to a declaratory judgment under *Public Service Commission v. Wycoff Co.,* 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952), because the only useful purpose for the judgment would be to create a res judicata effect in subsequent state proceedings. Because that res judicata effect "would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment," a declaratory judgment was improper.

■ The Court finds that the *Green* decision prevents it from entering a declaratory judgment against Norman. Like the order contemplated in *Green,* a declaratory judgment against Norman that the plaintiffs are entitled to better treatment than they received would have a res judicata effect against Norman in state proceedings which would follow any applications from class members. *Cf. Steffel v. Thompson,* 415 U.S. 452, 470–71, 94 S.Ct. 1209, 1221–22, 39 L.Ed.2d 505 (1974). With a declaratory judgment against Norman unavailable, there is no form of relief against Norman to which an order compelling the Iowa agency to give notice could be ancillary. Because this also makes a notice order against Norman unavailable, there is no relief against Norman which this Court may enter, and the claims against Norman must be dismissed.

■ The same cannot be said for the plaintiff's claims against Bowen. A declaratory judgment against Bowen would have a distinctly different effect than a declaratory judgment against Norman. Even if a declaratory judgment against Bowen would have a res judicata effect, that effect would not be binding against Defendant Norman. *Portsmouth Hospital v. Indemnity Ins. Co.,* 109 N.H. 53, 242 A.2d 398, 401 (1968). It is Norman, not Bowen, who is the party adverse to the plaintiffs in the state proceedings for benefits. For this reason, a declaratory judgment against Bowen will not predetermine the outcome of the state proceedings, as a declaratory judgment against Norman would. Therefore, it would not be tantamount to an award of damages or restitution against Norman and would avoid the Eleventh Amendment problems with which the *Green* court was concerned.

If a declaratory judgment against Bowen "would serve no purpose whatever in resolving the remaining dispute between the parties," it might still be unavailable. *Green,* 106 S.Ct. at 428 n. 2. However, for the following reasons, the Court believes a declaratory judgment against Bowen would serve a very useful purpose by clarifying a vague section of the 1986 Act which hangs like a black cloud over these proceedings.

How Bowen's agency chooses to interpret federal law has an important influence on the way in which Norman's agency awards benefits. Because Norman's agency can be penalized by Bowen for making overpayments, *see* 42 U.S.C. § 603(i)(1)(a) (West Supp.1987), Norman's agency has a natural inclination to apply Bowen's interpretations of law. Thus, an applicant whose right to benefits depends upon an interpretation which Bowen has not approved can expect to encounter resistance from Norman's agency.

As the second part of this Order reveals, the plaintiffs and defendants are interpreting certain paragraphs of § 1883 of the 1986 Act in radically different ways. The plaintiffs have adopted an interpretation of ¶¶ (b)(3) and (b)(11) of the 1986 Act which would require Norman's agency to retroactively apply the more favorable standards in the 1986 Act. From Bowen's point of view, ¶ (b)(11) restricts applicants' rights to rely upon the retroactive effective date of ¶ (b)(3) *and* the more favorable standards required in the Eighth Circuit's *Morrison* decision. Thus, if a plaintiff filed an application today in Norman's agency for benefits which would only be available if the 1986 law were fully retroactive or if *Morrison* still applied, Bowen's contrary interpretation would have a chilling effect upon Defendant Norman's readiness to accept the plaintiffs' theory.

This disagreement is not simply an abstract dispute about the meaning of the 1986 Act; if Bowen's interpretation is used, the plaintiff class will most likely continue to suffer from a concrete injury created by their prior treatment. Thus, the question of the meaning of the 1986 Act is properly before the Court. "In this country it is chiefly to the judiciary that is entrusted the task of preventing a discrepancy between the law as declared and as actually administered. This allocation of function has the advantage of placing the responsibility in practiced hands, subjecting its discharge to public scrutiny, and dramatizing the integrity of the law." L. Fuller, *The Morality of Law* 81 (1963).

If a federal court can resolve the meaning of these provisions through a declaratory judgment against Bowen, it could make the administrative process run more rationally without *compelling* the state to spend a penny. Because such an order may prevent Bowen from making an unwarranted attempt to reduce the state's AFDC funding, this kind of declaratory judgment would advance the state's interest in being protected from surprise attacks on its budget, which is an interest which the *Edelman* decision was intended to further. For these reasons, the Court finds that it may consider entering a declaratory judgment against Bowen under the Declaratory Judgment Act, 28 U.S.C. § 2201–2.

Because the Court may enter a declaratory judgment against Bowen, the notice order sought by the plaintiffs may be proper if required from Bowen. While this case is not identical to *Quern* because an injunction has not already been entered, the Court believes this is not a meaningful difference. Because the declaratory judgment and notice order would not directly or indirectly compel the state to pay anything to the plaintiffs, the Eleventh Amendment problem disappears. Furthermore, the Court is not impressed with Bowen's contention that his agency cannot give notice because it has no direct relationship with AFDC beneficiaries. The cases cited for this point do not support it. The problem which gave rise to this action was wholly federal in origin; it arose when a federal agency misinterpreted federal law and compelled state agencies to follow that misinterpretation. Under these circumstances, that federal agency should not be allowed to disavow its responsibility for putting the pieces back together.

### The Plaintiffs' Statutory Rights to Past-Due Benefits

■ Until the 1986 Act was passed, the plaintiffs' statutory rights to benefits were relatively easy to determine. If a teenage mother who was subject to deeming was an eighteen-year-old secondary school student living with a parent or guardian, such deeming was proper and benefits were properly calculated. However, if she was

not in school, under the *Morrison* interpretation of the 1984 Act, she should not have been deemed and she was entitled to have her benefits recalculated without regard to her parents' income.

However, in the 1986 Act, Congress did not simply create a new standard; it added two other provisions which complicate the Court's task. Subdivision (b)(3)(B) of § 1883 states that the amendment preventing all eighteen-year-olds from being "deemed" "shall be effective beginning October 1, 1984." This provision raises a question of whether the 1986 standard shall be applied retroactively in a way which requires a reevaluation of both the class which the plaintiffs initially propose and all other eighteen-year-olds subjected to deeming since 1984, whom the plaintiffs now wish to include in the class as well. However, the defendants consider that § 1883(b)(11)(B) is a severe limitation on the plaintiffs' reading of ¶ 3:

> (B) No state shall be considered to have made any overpayment or underpayment of aid, under its plan approved under section 402(a) of the Social Security Act, by reason of its compliance or noncompliance with the provisions of any amendment made by ¶ (1), (2), (3) [the amendment involved here], or (10) (or solely because of the extent to which its requirements are consistent or inconsistent with such provisions) in the administration of the plan during the period specified in subparagraph (a) [i.e., the period beginning October 1, 1984, and ending on October 21, 1986].

The defendants contend that ¶ 11(B) prevents applicants from relying upon ¶ 3 or the *Morrison* interpretation of the 1984 Act in seeking past-due benefits. They characterize the plaintiffs' theory as a claim that the state made "underpayments ... by reason of its noncompliance" with the provisions of ¶ 3 of § 1883(b). Because ¶ 11 implies that a loss of AFDC benefits which resulted from Iowa's noncompliance with ¶ 3 should not be considered an "underpayment," the defendants appear to argue that there was no underpayment to the plaintiffs which could give rise to an obligation to pay past-due benefits. Under this interpretation, the seemingly more beneficial 1986 Act actually took away the plaintiffs' rights.

The Court recognizes that "some deference" is often due to agency interpretations of laws they are charged with applying. *NLRB v. Hearst Publications, Inc.*, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170 (1944). However, when congressional intent is clearly discernible from the face of the statute, the Court cannot defer to a contrary agency interpretation. *Chevron USA v. Natural Resources Defense Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Even when congressional intent is not clear, the Court may reject an agency's interpretation of the law if it is unreasonable. *Id.* 467 U.S. at 845, 104 S.Ct. at 2783.

In this case it is clear that ¶ 11 was only intended to regulate the use of the 1986 Act's standards to reevaluate determinations made between 1984 and 1986. The plaintiffs have argued since the beginning of this action that the defendants' determinations during this time period were improper because they were made under the incorrect interpretation of the *1984* Act. Thus, even if the Court accepts the defendants' premise that § 11 was intended to limit claimants' rights, the defendants cannot rely solely upon ¶ 11 to limit the present power of claimants to assert rights which already existed under the 1984 Act.

However, Defendant Bowen also appears to rely upon the retroactivity provision of ¶ 3 and contends that because the new standards are retroactive, the old standards in the 1984 Act have been superseded and thus cannot provide any basis for an award. This contention only helps the defendants if the Court also believes that ¶ 11 prevents the Court from using the the 1986 Act to evaluate the plaintiffs' entitlement to benefits for periods prior to October 1986.

The Court has difficulty believing that Congress would have chosen such a roundabout way of producing the simple result which Defendant Bowen contends the law requires. If Congress actually intended to

insulate states from liability to claimants for wrongfully withholding benefits between 1984 and 1986, it could have said so in one sentence. The fact that Congress legislated in a more complex manner indicates to the Court that Congress intended to achieve a more sophisticated result. Furthermore, the defendant's construction would deprive the retroactivity clause of ¶ 3 of its retroactive effect, which is too absurd to believe Congress would have intended.

The Court believes that Congress sought to achieve the results described by the plaintiffs. From this perspective, the retroactivity provision of ¶ 3 was designed to permit states to use a single formula for evaluating eligibility for periods before and after October 1986. Because the formula in ¶ 3 was more beneficial to claimants, the retroactivity provision has the intended or incidental effect of improving the rights of claimants to past-due benefits. This interpretation is hardly obvious, but it is much more reasonable than that suggested by the defendants. The plaintiffs read ¶ 11 as an attempt to relieve the states of an administrative burden, rather than a means of canceling the effect of the retroactivity provision and the accrued rights of beneficiaries. Under existing regulations, Defendant Bowen requires states to conduct a quality control program which keeps track of overpayments and underpayments of AFDC benefits. *See* 45 C.F.R. § 205.-40(a)(5) (1986). When such errors are discovered, states must "take appropriate corrective action on improperly authorized or denied assistance." 45 C.F.R. § 205.-40(b)(iv). If there were no provision instructing states to disregard the retroactive provisions of the 1986 Act in determining when an underpayment had occurred, the quality control program would require

states to *initiate* a program to recalculate the eligibility of a great number of persons. Paragraph 11 serves that purpose, and in doing so, relieves the states of the heavy administrative burden of self-correction.

Three conclusions follow from this analysis. First, the plaintiffs continue to have rights to submit new applications and to have their eligibility for earlier periods governed by a standard other than the Secretary's 1985 regulation. It would therefore be improper for the Court to dismiss the plaintiffs' entire action. Second, the proper standard is § 1883(b)(3) of the 1986 Act. Third, this right to have the 1986 standards apply extends equally to members of the first proposed class and members of the second proposed class. Therefore, the plaintiffs' amended motion for class certification should be granted.[4]

The plaintiffs' motion for summary judgment was filed prior to the enactment of the 1986 Act and, thus, is out of date. Rather than reframing that motion, the Court will ask the plaintiffs to submit a proposed order which recertifies the class according to the amended motion filed November 4, 1986, issues a declaratory judgment against Defendant Bowen consistent with this order, and requires Defendant Bowen to issue *Quern*-type notice to all class members. The defendants will be permitted to comment upon the proposed order prior to its adoption, and the Court reserves the right to reject all or part of it. Because the 1986 Act and today's order have changed the context of the motion for summary judgment against Defendant Bowen filed by Defendant Norman, Defendant Norman should either revise, reassert or withdraw that motion within the next fourteen days.

IT IS THEREFORE ORDERED that the motion to dismiss under Rule 12 filed by Defendant Norman is granted.

**4.** Defendant Norman challenged the motions to certify plaintiff classes because she believes the number of class members is too small to satisfy the "numerosity" requirement of Rule 23. However, the Court believes the case is particularly well suited for resolution through a class action because the class is scattered throughout the state. *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1319–20 (9th Cir.1982). Furthermore, the plaintiffs' counsel have calculated that their sec-

ond proposed class contains approximately 53 members, and courts generally follow the rule of thumb that a class of over 40 persons is sufficiently "numerous" for Rule 23 purposes. 3B J. Moore, W. Taggart, J. Wicker, *Moore's Federal Procedure* 23.05[1] (2d ed. 1981). Because a lack of numerosity was the only independent ground asserted by the defendants in resistance to the motions for class certification, the Court finds that certification is appropriate.

IT IS FURTHER ORDERED that the motion to dismiss filed by Defendant Bowen is denied.

IT IS FURTHER ORDERED that the plaintiffs' motion to amend their complaint is granted.

IT IS FURTHER ORDERED that the plaintiffs shall submit to the Court a proposed order which certifies the class pursuant to the plaintiffs' November 4, 1986 motion, issues a declaratory judgment against the Defendant Bowen consistent with this order, and requires Defendant Bowen to issue *Quern* -type notice to all class members. This proposed order shall be submitted within thirty days of the receipt of this Order.

IT IS FURTHER ORDERED that Defendant Norman shall inform the Court whether her cross-claim against Defendant Bowen will be revised, reasserted or withdrawn within the next fourteen days.