Victoria GRIMESY; Lisa M. Mayo; Erika Smith; Lucy Rico; Michelle Boles; Gina Mosqueda; Plaintiffs/Appellees,

v.

Jesse HUFF, Director, State Department of Finance; State Department of Finance, Defendants/Appellees.

Linda McMAHON, Director, State Department of Social Services; State Department of Social Services, Defendants/Third–Party–Plaintiffs/Appellees,

v.

Otis R. BOWEN, as Secretary of the United States Department of Health and Human Services; and the United States Department of Health & Human Services, Third–Party–Defendants/Appellants.

No. 87–1745.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 16, 1988.

Decided May 25, 1989.

As Amended on Denial of Rehearing July 25, 1989.

Gregory C. Sisk, Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C., John J. Klee, Jr., Deputy Atty. Gen., San Francisco, Cal., for appellants.

Peter Reid, Redwood City, California, Charles Greenfield, San Jose, Cal., for plaintiffs-appellees.

Before GOODWIN, Chief Judge, SNEED and HUG, Circuit Judges.

SNEED, Circuit Judge:

Plaintiffs sued various California state officials and agencies (California), successfully challenging the validity of state and federal regulations that reduced or eliminated Aid to Families with Dependent Children (AFDC) benefits to eighteen year-old mothers living at home with their parents and not attending school. *See* Calif.Welf. & Inst.Code § 11008.14 (West Supp.1989); 45 C.F.R. § 233.20(a)(3)(xviii) (1987). California filed a third-party complaint against the Department of Health and Human Services (HHS). As part of the district court's final judgment, California and HHS were ordered to reimburse those plaintiffs whose benefits had been improperly reduced as well as pay interest. HHS appeals[1] and we reverse.

## I.

### FACTS AND PROCEEDINGS BELOW

This is a class action. Plaintiffs are eighteen-year-old mothers, residing with their parents, who are not attending school. To simplify discussion these mothers will be designated as "class AX mothers."[2] Plaintiffs sued California challenging a state law implementing "grandparent deeming." *See* Cal.Welf. & Inst.Code § 11008.14 (West Supp.1989). We designate as "class A mothers" the class of eighteen-year-old mothers otherwise eligi-

---

1. California did not file a notice of appeal. The state did, however, file a brief supporting plaintiffs' position.

2. The following is a description of all the classifications that this opinion uses.

   Class A mothers—the set of all eighteen-year-old mothers residing with their parents and otherwise eligible for AFDC benefits.

   Class AX mothers—the subset of class A mothers who are not attending school.

   Class AY mothers—the subset of class A mothers who are attending school and intend to graduate before age 19.

   Class AZ mothers—the subset of class A mothers who are attending school but do not intend to graduate before age 19.

ble for AFDC benefits. Plaintiffs are, as class AX mothers, a subset of a class A mothers consisting of *all* eighteen-year-old mothers, residing with their parents but not attending school. Plaintiffs claim that the regulation violated the AFDC statute and sought injunctive relief against continued enforcement of the regulation as well as payment for wrongfully denied benefits.

California removed the action to federal court and filed a third-party complaint against HHS. California responded that § 11008.14 was promulgated to comply with 45 C.F.R. § 233.20(a)(3)(xviii) (1987) and requested that, if plaintiffs prevailed, HHS be required to reimburse California for their share of any underpayment.

The challenged regulations address the computation of household income for the purposes of determining a "child-mother's" eligibility for, and the amount of, AFDC benefits. "Grandparent deeming" refers to those cases in which the income of the infant child's grandparents is deemed available to the mother and child. The grandparent deeming statute was promulgated as part of the Deficit Reduction Act of 1984, Pub.L. No. 98–369, sec. 2640(a)(3), § 402(a)(39), 1984 U.S.Code Cong. & Admin. News (98 Stat.) 494, 1145 (codified as amended at 42 U.S.C. § 602(a)(39)), and became effective on October 1, 1984. It required grandparent deeming for all parents under the age "selected by the State pursuant to [42 U.S.C. § 606(a)(2)].  . . ." *Id.* Section 606(a)(2) provides that the term "dependent child" shall include a needy child who is "(A) under the age of eighteen, or (B) at the option of the State, under the age of nineteen and a full-time student in a secondary school," if the child is reasonably expected to graduate before age nineteen [class AY mother]. 42 U.S.C. § 606(a)(2) (1982). The designation "class AY mothers" indicates that the class also is a subset of class A mothers.

For states like California that opted for the broader definition of dependent child under 42 U.S.C. § 606(a)(2)(B), HHS *required* grandparent deeming for *all* eigh-

teen-year-old parents living with their parents, regardless of school attendance, that is, all class A mothers. *See* 45 C.F.R. § 233.20(a)(3)(xviii). Plaintiffs argued that 42 U.S.C. § 606(a)(2) and § 602(a)(39) permitted grandparent deeming *only* if the eighteen-year-old mother living with her parents was attending school and expected to graduate before she turned nineteen; that is, deeming should be permitted only with respect to class AY mothers.

The district court agreed with plaintiffs, class AX mothers, and permanently enjoined enforcement of this regulation. Other courts that have addressed this issue have done the same. *E.g., Kali v. Bowen,* 800 F.2d 971, 973 (9th Cir.1986); *Morrison v. Heckler,* 602 F.Supp. 1482, 1488–92 (D.Minn.1984), *aff'd,* 787 F.2d 1285 (8th Cir. 1986).

The issue of prospective relief became moot when Congress amended the grandparent deeming statute in sec. 1883(b)(3) of the Tax Reform Act of 1986, Pub.L. No. 99–514, 1986 U.S.Code Cong. & Admin. News (100 Stat.) 2085, 2917 (codified at 42 U.S.C.A. § 602(a)(39) (West Supp.1989)). The amended statute *prohibited* grandparent deeming for all eighteen-year-old parents, that is all class A mothers. *Id.*

The district court held that plaintiffs, class AX mothers, were entitled to payment of benefits wrongfully denied on the basis of the invalidated HHS and California regulations. The court ordered the parties to negotiate an order concerning the provision of the wrongfully denied benefits. Plaintiffs and California stipulated to a proposed order that would identify the class members, notify them of their rights, and permit them to make claims for benefits denied plus interest at ten percent per annum. The order also required HHS to provide federal financial participation to California in making the reimbursements, including interest. The district court accepted the proposed order with one change, and rejected HHS' objections. HHS challenges the award of retroactive benefits and the award of interest.[3]

---

**3.** When this appeal was first filed, HHS also challenged the jurisdiction of this court, claiming that the Court of Claims had exclusive jurisdiction over this cause of action. HHS con-

## II.

## JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 (1982). The case was properly removed pursuant to § 1441(b). Our jurisdiction rests on § 1291.

## III.

## STANDARD OF REVIEW

This appeal addresses issues of law and therefore the district court's decision is reviewed de novo. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## IV.

## STATUTORY CONSTRUCTION

### A. *Retroactive Relief*

HHS first argues that the district court's award of retroactive relief was improper. As discussed above, Congress amended the AFDC statute as part of the Tax Reform Act of 1986. The new law prohibited grandparent deeming for all class A mothers, a class that includes classes AX, AY, and a third class, AZ mothers, which will be described shortly. *See* 42 U.S.C.A. § 602(a)(39) (West Supp.1989). Congress made the new provision retroactive to October 1, 1984. *See* Pub.L. No. 99–514, sec. 1883(b)(3)(B), 1986 U.S.Code Cong. & Admin.News (100 Stat.) at 2917. Congress also provided:

> No State shall be considered to have made any overpayment or underpayment of aid, under … the Social Security Act, by reason of its compliance or noncompliance with the provisions of any amendment made by [sec. 1883(b)(3) ] … in the

administration of the plan during the period [from October 1, 1984 to the day preceding the enactment of this statute]. *Id.* sec. 1883(b)(11)(B), 1986 U.S.Code Cong. & Admin.News (100 Stat.) at 2918.

Based on this final provision, HHS argues that the award to the plaintiffs cannot survive. By making the statute retroactive, it suggests that sec. 1883(b)(3)(11) preempts this suit. *See Stop H–3 Ass'n v. Dole*, 870 F.2d 1419, 1432 (9th Cir.1989) (upholding Congress' power "to moot a pending controversy by enacting new legislation").[4] In essence, HHS contends that plaintiffs are challenging an interpretation of a repealed statute. Further, the section quoted above, sec. 1883(b)(11)(B), demonstrates Congress' desire that HHS not be held liable for any interpretation of the previous statute that was admittedly ambiguous. Plaintiffs respond that this interpretation is too broad. They argue that because the new statute prohibited grandparent deeming for another class of eighteen-year-old mothers (*i.e.*, eighteen-year-old mothers residing at home and attending school and not intending to graduate by nineteen, class AZ mothers by our designation) Congress merely intended to prohibit suits for retroactive benefits by this subclass of beneficiaries. Further, sec. 1883(b)(11)(B) is limited to the *amendments* made by the Tax Reform Act, not the prior statute.

The issue is whether the result of sec. 1883(b)(11)(B) was to impose the burden of deeming from October 1, 1984, to the date before its enactment, only upon classes AY and AZ mothers or upon the entire group of class A mothers consisting of the plaintiffs, AX mothers, as well as the AY and AZ mothers. The proper interpretation of

cedes that the Supreme Court's opinion in *Bowen v. Massachusetts*, —— U.S. ——, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), foreclosed this challenge.

Additionally, HHS also challenged the district court's refusal to limit the award of retroactive benefits to current AFDC beneficiaries. This court rejected the identical argument in *Edwards v. McMahon*, 834 F.2d 796, 799–800 (9th Cir.1987). HHS acknowledges that *Edwards* binds this court.

4. While undoubtedly the separation of powers doctrine limits this type of congressional preemption, we are confident that Congress can adjust its social services programs retroactively so as to clarify rights under ambiguous statutes involved in pending entitlement litigation without encountering these limits. *See* Part V(B), *infra.*

the statute and amendments is not self-evident. Among the numerous legislative reports accompanying the Tax Reform Act of 1986, none explains why sec. 1883(b)(11)(B) was added. Nor have the parties suggested an entirely satisfactory explanation.

Only one court has addressed this issue. *See Richter v. Bowen,* 669 F.Supp. 275 (N.D.Iowa 1987). In *Richter,* the district judge concluded that Congress intended that sec. 1883(b)(11)(B) relieve the states of the administrative burden of recalculating AFDC benefits, and that the amendment did not limit substantive liability. As a result, the court held that *all* eighteen-year-olds (class A mothers), even those that the plaintiffs conceded were properly subject to grandparent deeming under the previous statute, were entitled to retroactive benefits. *Id.* at 280–81.

■ We decline to follow *Richter.* It simply defies common sense that from this language one could conclude that Congress not only intended to grant retroactive benefits to those who were wrongfully denied benefits but also grant a windfall to those parents, class AY mothers, who, all concede, properly were subject to grandparent deeming under the old regulations.

We believe that HHS' position represents the most plausible interpretation of the statutory amendment. Had Congress intended to allow the plaintiffs to recover for the wrongfully denied benefits, then there would have been no reason to include sec. 1883(b)(11)(B). Conversely, if, as the plaintiffs suggest, Congress merely wanted to avoid giving a windfall to the class of newly eligible mothers (class AY mothers) this could have been accomplished by making the statute prospective. In order to give meaning to sec. 1883(b)(11)(B), as we are required to do, *see, e.g., United States v.*

*Handy,* 761 F.2d 1279, 1280 (9th Cir.1985); *CO Petro Marketing Group, Inc. v. Commodity Futures Trading Comm'n (In re CO Petro Marketing Group, Inc.),* 680 F.2d 566, 569–70 (9th Cir.1982), we conclude that by including this section, Congress intended to foreclose plaintiffs' recovery. Class AX mothers must be treated as classes AY and AZ mothers. This seems to be the best interpretation of the language of the section: "no state shall be considered to have made any ... underpayment of aid ... by reason of its compliance ... with the provisions of any amendment...." Pub.L. No. 99–515, sec. 1883(b)(11)(B), 1986 U.S.Code Cong. & Admin.News (100 Stat.) at 2918.

*B. Manifest Injustice*

Even if HHS' interpretation of the statute is correct, plaintiffs urge that applying the statute retroactively to bar relief would be a "manifest injustice," citing *Bradley v. School Bd.,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). A court should "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice." *Id.* at 711, 94 S.Ct. at 2016. In its alternative holding, the district court held that this doctrine should be applied in this case.[5]

■ The manifest injustice exception, however, does not apply when Congress clearly intends that a statute be applied retroactively. "Where Congress has manifested its intent in unambiguous terms, we do not think a court is free to fashion equitable exceptions for situations where it feels retroactive application would produce a manifest injustice not amounting to a violation of due process...." *Long v. IRS,* 742 F.2d 1173, 1183 (9th Cir.1984); *accord Estate of Bradford v. United States,* 645 F.Supp. 476, 479 (N.D.Cal.1986).

---

5. The plaintiffs argue that this part of the district court's decision should be reviewed for abuse of discretion because the district court was making an equitable determination. They cite *Turf Paradise, Inc. v. Arizona Downs,* 670 F.2d 813 (9th Cir.), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2308, 73 L.Ed.2d 1308 (1982), as support for this assertion. In *Turf Paradise* this court reviewed a district court's decision to abstain for abuse of discretion, reasoning that abstention is an "exercise of the court's equity powers." *Id.* at 819. *Turf Paradise* is not con-

trolling. We have consistently, albeit never explicitly, reviewed the application of the manifest injustice exception de novo. *See, e.g., DeGurules v. INS,* 833 F.2d 861, 863 (9th Cir.1987); *California Cartage Co. v. United States,* 802 F.2d 353, 357–58 (9th Cir.1986). Conversely, *Turf Paradise* is consistent with this court's practice of reviewing the application of the abstention doctrines for abuse of discretion. *See, e.g., McIntyre v. McIntyre,* 771 F.2d 1316, 1319 (9th Cir.1985); *Pue v. Sillas,* 632 F.2d 74, 78 (9th Cir.1980).

■ Although the terms of the amendment to the AFDC statute may be unclear, Congress left no doubt that the amendments were to be applied retroactively. Congress explicitly made the amendments retroactive to October 1, 1984. We, therefore, are bound to apply them retroactively.

Even were we to apply the manifest injustice doctrine in this case, we would reach the same result. The Supreme Court identified three factors that should be considered in deciding whether the application of a new statute would cause manifest injustice. These are "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon these rights." *Bradley*, 416 U.S. at 717, 94 S.Ct. at 2019. No single factor is controlling. *City of Great Falls v. United States Dep't of Labor*, 673 F.2d 1065, 1068 (9th Cir.1982) (per curiam)

Applying these factors to this case, we would conclude that no manifest injustice will occur by applying this law retroactively. HHS argues that reducing fiscal outlays is a "great national concern" and therefore the first factor must be weighed heavily in its favor. This suggests the image of a somewhat overextended rich man begging alms from the poor. The nation would survive an adverse judgment in this case. *Cf. Campbell v. United States*, 809 F.2d 563, 575 (9th Cir.1987) (stating that amendment affecting the rate of interest government pays on damages was not a matter of national concern). As a general rule, manifest injustice is not likely to be found if the government is adversely affected. *Id.* Conversely, if only private parties are involved, courts are more likely to apply the exception. *Bradley*, 416 U.S. at 717, 94 S.Ct. at 2019. No court, however, has discussed the situation presented here—when the government is advocating retroactive application of a statute in order to reduce or eliminate the recovery of a private party. What tilt is suggested by the nature and identity of the parties favors the plaintiff. It is not a strong force, however; comparisons between plaintiffs and their related class members weakens their position.

The second factor addresses the nature of the parties' rights. This court has refused to apply a law retroactively when " 'to do so would infringe upon or deprive a person of a right that had matured or become unconditional.' " *Campbell*, 809 F.2d at 575 (quoting *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2020). In this case, plaintiffs cannot contend that their right to damages had matured or become unconditional. The judgment was still subject to review in this court.

The third factor addresses "the possibility that new and unanticipated obligations may be imposed upon a party without notice or an opportunity to be heard." *Bradley*, 416 U.S. at 720, 94 S.Ct. at 2021. Again, this factor is not relevant here. The obligations of the respective parties are the subject of this suit. They have been heard. Nothing "unanticipated" has resulted from the adoption of the amendments.

■ The "manifest injustice" exception, a rule of equity, is designed to exclude the small class of cases in which the parties' obligations are changed unfairly by the new law. Such an equitable rule has no application in this case where the statutory amendment clarified an ambiguous statute pertaining to a narrow class of dependent children.

## V.

## CONSTITUTIONAL OBJECTIONS

### A. *Taking*

■ Plaintiffs next assert two constitutional objections to our interpretation of sec. 1883. They argue that, by interpreting the statute to deny them retroactive relief, we have effected a taking without compensation under the Fifth Amendment. What has already been said refutes this. A constitutional taking has occurred when "property" has been "taken." *See Konizeski v. Livermore Labs (In re Consolidated United States Atmospheric Testing Litig.)*, 820 F.2d 982, 988 (9th Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 1076, 99 L.Ed.2d 235 (1988).

Although the Supreme Court has suggested that a cause of action is a "species

of property," *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265 (1982), a party's property right in any cause of action does not vest " 'until a final *unreviewable* judgment is obtained.' " *Atmospheric Testing,* 820 F.2d at 989 (quoting *Hammond v. United States,* 786 F.2d 8, 12 (1st Cir.1986)) (emphasis added). In *Atmospheric Testing,* the plaintiffs sued various government contractors for damages arising out of exposure to radiation during nuclear testing. While the action was pending, Congress passed a law which required that any action against these contractors be maintained against the United States under the Federal Tort Claims Act (FTCA). *Id.* at 986.[6] This court, adopting the opinion of the district court, held the plaintiffs had no property right in their claims against the government contractors. *Id.* at 988–89.

Recently, this court applied *Atmospheric Testing* to uphold the application of a statutory amendment that barred the plaintiffs recovery of damages. *See Austin v. City of Bisbee,* 855 F.2d 1429 (9th Cir.1988). In *Austin,* the plaintiffs, city police officers, sued to recover overtime pay for the hours they spent "on-call." *Id.* at 1431. Their right to recovery was founded upon the Supreme Court's interpretation of the Fair Labor Standards Act (FLSA) in *Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). After the plaintiffs filed their action, but before a final decision was rendered, Congress amended the FLSA to bar relief for failure to pay overtime prior to 1986. *See Austin,* 855 F.2d at 1431. This court rejected the plaintiffs' Fourteenth Amendment challenge to the statutory amendment, observing that the plaintiffs' property interest in their cause of action did not vest until there was a final, unreviewable judgment. *Id.* at 1435–36; *see also Jefferson Disposal Co. v. Parish of Jefferson,* 603 F.Supp. 1125, 1137 (E.D.La. 1985) ("[A] plaintiff does not have a vested property right under the due process clause of the Fifth Amendment in a mere claim for damages."). This conclusion is consist-

ent with that of other courts which have considered the issue. *See, e.g., Eddings v. Volkswagenwerk, A.G.,* 835 F.2d 1369, 1373 (11th Cir.) (holding no Fourteenth Amendment violation in the retroactive application of twelve year statute of repose that barred plaintiffs' relief), *cert. denied,* —— U.S. ——, 109 S.Ct. 68, 102 L.Ed.2d 44 (1988); *Hammond,* 786 F.2d at 12 (upholding application of statute substituting the United States as defendant in nuclear testing litigation that operated to bar plaintiffs' recovery); *Hudson County Welfare Dep't v. Roedel (In re Roedel),* 34 B.R. 689, 694 (D.N.J.1983) (holding that debtor had no "vested right" to discharge of child support debt when Congress amended statute before discharge to make debt nondischargeable), *aff'd,* 734 F.2d 5 (3d Cir.1984).

Thus, there was no Fifth Amendment taking.

## B. *Separation of Powers*

■ Plaintiffs next assert that the enactment of sec. 1883 violated the separation of powers principle. *See United States v. Sioux Nation of Indians,* 448 U.S. 371, 404, 100 S.Ct. 2716, 2735, 65 L.Ed.2d 844 (1980); *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1871).

This argument is foreclosed by our decision in *Atmospheric Testing.* We held that Congress had not violated the separation of powers doctrine because the statute in question "neither directs the court to make a certain finding of fact nor requires [the court] to apply an unconstitutional law...." 820 F.2d at 992.

Plaintiffs insist this is not a good enough answer. As they see it, Congress violated the first prohibition by mandating a finding of fact. That is extremely doubtful. Whether a particular class of child mothers is subject to a "deeming" rule sounds very much like a legal issue, not unlike a multitude of income tax issues such as whether a corporate distribution is "essentially equivalent to a dividend," *etc.* However, assuming a finding of fact was mandated, they further argue that if *either* compo-

---

**6.** After the United States was substituted as the defendant, the district court granted summary judgment in favor of the United States under the discretionary function exception to the FTCA. *See id.* at 984.

nent is present, Congress has violated the principle. They point out that the court in *Atmospheric Testing* relied on *United States v. Brainer,* 691 F.2d 691 (4th Cir. 1982), in which the Fourth Circuit stated that "Congress violates the separation of powers when it presumes to dictate 'how the Court should decide an issue of fact (under threat of loss of jurisdiction)' and purports 'to bind the Court to decide a case in accordance with a rule of law independently unconstitutional on other grounds.' " *Id.* at 695 (quoting P. Bator, D. Shapiro, P. Mishkin & H. Wechsler, *Hart and Wechsler's The Federal Courts and the Federal System* 316 n. 4 (2d ed. 1973) [hereinafter *Hart & Wechsler* ]). Plaintiffs argue that the Fourth Circuit misconstrued *Hart & Wechsler,* that the authors believed that Congress violates the separation of powers principle if either component is present. *See Hart & Wechsler* at 316 n. 4. Putting aside the question of whether, even if true, this undermines the holding in *Atmospheric Testing,* plaintiffs' position is undermined by the fact that the authors of *Hart & Wechsler* modified their position in the newest edition, stating that the Supreme Court has not definitively held that Congress may not prescribe issues of fact. *See* P. Bator, D. Meltzer, P. Mishkin & D. Shapiro, *Hart and Wechsler's the Federal Courts and the Federal System* at 369 n. 5 (3d ed.1988) (citing Young, *Congressional Regulation of Federal Courts' Jurisdiction and Processes: United States v. Klein Revisited,* 1981 Wis.L.Rev. 1189, 1233–38).

Thus, however the matter is approached, our holding remains firm. Congress, by enacting sec. 1883(b)(11)(B) as interpreted by this court, did not violate the separation of powers principle.

## VI.

## CONCLUSION

We hold that by enacting sec. 1883(b)(11)(B) Congress intends to preclude the award of retroactive benefits based on the Secretary's incorrect interpretation of the statute. We decline to use the manifest injustice doctrine to avoid applying the amendment retroactively. Finally, sec. 1883(b)(11)(B) neither effects an unconstitutional taking of plaintiffs' property nor violates the separation of powers principle. We note that because California did not appeal the district court's decision, this opinion has no effect on the district court's orders as they pertain to the State of California.

REVERSED AND REMANDED.

