David AUSTIN and Denise Austin, husband and wife; Mary Katherine Gojkovich, a single person, Plaintiffs–Appellants,

v.

CITY OF BISBEE, ARIZONA, a body politic, Defendant–Appellee.

No. 87–1595.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 13, 1987.

Decided Aug. 29, 1988.

Tony K. Behrens, Desens, Behrens & Hitchcock, Bisbee, Ariz., for plaintiffs-appellants.

Gerald F. Till, Sierra Vista, Ariz., for defendant-appellee.

Before GOODWIN, and FLETCHER, Circuit Judges, and KING,* District Judge.

FLETCHER, Circuit Judge:

In November 1985, Mary Katherine Gojkovich and David Austin, police officers for the City of Bisbee, Arizona, sued the city under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, for overtime pay for the hours the officers spent "on-call" while off-duty.[1] They argue that *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), which extended FLSA protections to all state and local government employees, entitles them to overtime compensation. Because we find that *Garcia* should not be applied retroactively to public employees engaged in traditional governmental functions, and that Congress did not unconstitutionally take away a property right when it amended the FLSA to postpone liability under *Garcia* until April 15, 1986, we affirm.

## BACKGROUND

Appellant Austin seeks overtime compensation under 29 U.S.C. §§ 207, 216(b) for 4,340 hours he allegedly spent on call between December 18, 1983 and April 6, 1985. Appellant Gojkovich likewise seeks compensation for 2,910 hours she allegedly was on-call between November 28, 1983 and June 2, 1984. During this period the City's policy was to require, as a condition of

employment, that certain police officers remain on "on-call" status during their off-duty hours. The parties jointly stipulated that "being on-call" meant that the officers were required to report a telephone number where they could be reached at all times, and that they be "ready, able, and willing to appear for duty immediately if and when summoned at said telephone number."

Before 1966, the overtime provisions of the FLSA did not apply to federal, state, and local governmental employees. In that year, and again in 1974, Congress amended the FLSA to include coverage for those employees. Fair Labor Standards Amendments of 1966, § 102(a) and (b), 80 Stat. 830, 831; Fair Labor Standards Amendments of 1974, § 6(a)(1) and (6), 88 Stat. 58, 60, 29 U.S.C. § 203(d) and (x). But in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), the Supreme Court held that the Tenth Amendment rendered the application of the FLSA to state and local governments unconstitutional, to the extent the Act interfered with the employment of people for "integral" and "traditional" state and local governmental functions, such as fire fighters, policemen, and school or public health employees. 426 U.S. at 851-52, 96 S.Ct. at 2474. This decision was the law during most of the period for which appellants now seek overtime compensation.

On February 19, 1985 the Supreme Court expressly overruled *National League of Cities* in *Garcia*, 469 U.S. at 531, 105 S.Ct. at 1007, thereby eliminating the City of Bisbee's exemption from overtime liability for its police force. But on November 13, 1985, Congress passed amendments to FLSA that delayed until April 15, 1986 state and local governments' liability for failure to comply with *Garcia*. Act of Nov. 13, 1985, Pub.L. No. 99-150, 99 Stat. 787.

On November 8, 1985, less than a week before Congress took action, plaintiffs filed this complaint. The District Court for the

---

* Hon. Samuel P. King, Senior United States District Judge for the District of Hawaii, sitting by designation.

1. Austin's wife sues for her community property interest in her husband's earnings.

District of Arizona granted summary judgment for the City of Bisbee on the ground that *National League of Cities*, not *Garcia*, controlled during the time period at issue. The court found, furthermore, that even if *Garcia* did control, the uncontroverted facts did not support the plaintiffs' contention that their "on-call" activities were compensable overtime under the FLSA. Austin and Gojkovich timely appealed. We have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

This court reviews grants of summary judgment de novo. *State of Idaho v. Hodel*, 814 F.2d 1288, 1292 (9th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 159, 98 L.Ed.2d 114 (1987). "Viewing all the evidence in the record in the light most favorable to the non-moving party, we must determine whether there is a genuine issue as to any material fact and, if not, whether the substantive law was correctly applied." *Id.*; Fed.R.Civ.P. 56(c).

This case presents two questions of law concerning retroactivity: first, whether *Garcia*'s holding should be applied retroactively to these police officers' claims for overtime between November 1983 and February 19, 1985 (the date the *Garcia* decision was handed down); and second, whether *Garcia* should render the City liable for overtime hours Austin worked between February 19th and April 6th, 1985, *i.e.*, whether the November 1985 amendment to the FSLA postponing liability until April 15, 1986 can constitutionally be applied retroactively to deprive public employees of a cause of action conferred by *Garcia*.

### I. *Retroactivity of Garcia.*

 Only a retroactive application of *Garcia* could make the FLSA provisions applicable to appellants' employment before February 19, 1985, since during that period their work as police officers was plainly exempted by *National League of Cities*. *National League of Cities* expressly included "police protection" in a list of examples of traditional governmental functions of the states and their political subdivisions that were exempted from FLSA coverage.[2] 426 U.S. at 851, 96 S.Ct. at 2474.

The district court correctly concluded that *Garcia* should be applied only prospectively. We recognize that "[t]he longstanding common law rule is that a decision reformulating federal civil law will usually be applied retroactively." *Kartevold v. Spokane County Fire Protection Dist. No. 9*, 625 F.Supp. 1553, 1555 (E.D.Wash. 1986); *see also Thorpe v. Housing Auth. of the City of Durham*, 393 U.S. 268, 281–82, 89 S.Ct. 518, 625–26, 21 L.Ed.2d 474 (1969) ("an appellate court must apply the law in effect at the time it renders its decision"). It is also true, however, that

> ... at times application of this retroactivity precept produces inequitable results, penalizing parties who ordered their affairs in reasonable reliance on a rule of law that was later invalidated. Such inequity is undesirable, not only because of the harm to the party involved, but also because it discourages adherence to contemporary laws.

*Mineo v. Port Auth. of New York and New Jersey*, 779 F.2d 939, 943 (3d Cir.1985), *reh'g denied*, 783 F.2d 42 (3d Cir.1986) (en banc), *cert. denied*, 478 U.S. 1005, 106 S.Ct. 3297, 92 L.Ed.2d 712 (1986). We agree that retroactive application would be inappropriate in this case.

Decisions that are to be applied only prospectively must satisfy the three-pronged test set forth in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Under *Chevron*, the decision to be applied only prospectively must:

> 1) establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression

---

**2.** An example of a category of public employees not exempted from the FLSA before *Garcia* is municipal transit workers. *See Alewine v. City Council of Augusta, Georgia*, 699 F.2d 1060 (11th Cir.1983), *cert. denied sub nom. City of Macon v. Joiner*, 470 U.S. 1027, 105 S.Ct. 1391, 84 L.Ed.2d 781 (1985).

whose resolution was not clearly foreshadowed;

> 2) state a rule whose retrospective operation will retard more than further its operation, considering the rule's prior history and its purpose and effect;

> 3) be a decision whose retroactive application could produce substantial inequitable results, and for which a holding of nonretroactivity would avoid injustice or hardship.

*Id.* at 106–07, 92 S.Ct. at 355.

We conclude that application of the *Chevron* factors mandates that *Garcia* not be applied retroactively. Without question, the first prong weighs against retroactive application. Following in the wake of the 1974 FLSA amendments and *National League of Cities*, *Garcia* was anything but an issue of first impression. And while *National League of Cities* was a vigorously criticized decision, *Garcia*'s holding cannot be said to have been clearly foreshadowed. *See Kartevold,* 625 F.Supp. at 1556–57. More important, *Garcia* overruled clear past precedent. It expressly reversed *National League of Cities,* which had specified that the FLSA did not apply to police, firefighters, and other traditional function employees.

The second prong presents a less clear answer. It is true that "the FLSA should be read broadly to accomplish its remedial objectives." *Kartevold,* 625 F.Supp. at 1557 (citing *Tony & Susan Alamo Found. v. Secretary of Labor,* 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985)). One might think retroactive application of its protections to all public employees would substantially benefit those the FLSA was intended to help. However, we think it more likely that retroactive application of *Garcia* here would actually hinder its prospective application because it "would wreak havoc on municipal budgeting and create unanticipated financial liability for already strapped municipalities." *Brooks v. Village of Lincolnwood,* 620 F.Supp. 24, 26 (N.D.Ill.1985). Our assessment coincides with that of Congress, which amended the FLSA to "defer[ ] application of the FLSA overtime provisions until ex-

actly one year after the mandate in *Garcia* so that state and local governments may make necessary adjustments in their work practices, staffing patterns, and fiscal priorities." S.Rep. No. 159, 99th Cong., 1st Sess. 15, *reprinted in* 1985 U.S.Code Cong. & Admin.News 651, 663. Congress's action was a response to municipalities that had "expressed an urgent need for lead-time in which to reorder their budgetary priorities while maintaining fiscal stability." *Id.* at 8; 1985 U.S.Code Cong. & Admin.News at 656. We note also that, given both *Garcia* and the 1985 FLSA amendments' clear requirement that state and local governments comply with the Act's provisions, retroactive application of *Garcia* would be unlikely to effect a higher level of compliance. *See Mineo v. Port Authority,* 779 F.2d at 945.

Third, we find that *Garcia* would "produce substantial inequitable results if applied retroactively." *Chevron,* 404 U.S. at 107, 92 S.Ct. at 355. This prong is enmeshed with the first. A retroactive application of *Garcia* would punish the City of Bisbee for structuring its employment contracts according to the "clear past precedent" that was controlling when the contracts were entered into. "[W]hen thousands of public officials across the country ... proceed in good faith to discharge their duty by entering into contractual agreements with their employees and on behalf of their constituency in reasonable reliance upon longstanding precedent, ... to have their efforts declared retrospectively unlawful ... is unfair to the public officials, to their taxpayers, and to the system at large." *Kartevold,* 625 F.Supp. at 1558–59. In addition, we read the 1985 FLSA amendments as Congress's recognition of the manifest unfairness of conferring liability retroactively.

All three prongs of the *Chevron* test need not be satisfied for a finding of nonretroactivity, since no single prong is dispositive. *See Barina v. Gulf Trading and Transp. Co.,* 726 F.2d 560, 563–64 (9th Cir. 1984); *Kartevold,* 625 F.Supp. at 1557. Here *Garcia*'s clear satisfaction of the first and third prongs, and probable satisfaction of the second, compels a finding

that it should not be applied retroactively to these plaintiffs. Most other courts agree. *See Mineo v. Port Authority,* 779 F.2d at 946; *Kartevold,* 625 F.2d at 1559; *Thurmond v. City of Union City, Tenn.,* 628 F.Supp. 146, 148 (W.D.Tenn.1986); *Kukla v. Village of Antioch,* 647 F.Supp. 799, 815–16 (N.D.Ill.1986); *Brooks v. Village of Lincolnwood,* 620 F.Supp. at 26.

The cornerstone of appellants' argument for retroactivity is the district court opinion in *Joiner v. City of Macon,* 627 F.Supp. 1532 (M.D.Ga.1986), *reversed in part on other grounds,* 814 F.2d 1537 (11th Cir. 1987). *Joiner,* however, is inapposite. The district court in *Joiner* rejected a *Chevron* analysis because the City of Macon's liability to its public transit workers was founded on a consistent history of application of FLSA to publicly-owned mass transit workers as nontraditional employees under *National League of Cities, see Alewine v. City Council of Augusta, Georgia,* 699 F.2d 1060, 1069 (11th Cir.1983), *cert. denied sub nom. City of Macon v. Joiner,* 470 U.S. 1027, 105 S.Ct. 1391, 84 L.Ed.2d 781 (1985), so that *Garcia* did not constitute a "clear break" with past precedent. *Joiner,* 627 F.Supp. at 1536–37. In other words, Macon's public transit workers were already covered by FLSA prior to *Garcia.* Thus, retroactive application of *Garcia* was unnecessary to *Joiner's* holding.

Appellants also direct our attention to Judge Becker's arguments in *Mineo* against *Garcia's* satisfaction of *Chevron* nonretroactivity. 779 F.2d at 951 (Becker, J., dissenting). However, those arguments are inapplicable to the case at bar. Like *Joiner, Mineo* presented the question whether the plaintiff employees were engaged in a state's "traditional governmental function." Judge Becker's main argument was that *Garcia* failed the first prong—it did not overrule clear past precedent on the applicability of the FLSA to Port Authority detectives—because the detectives were arguably public transit employees, thus falling outside *National League of Cities'* "traditional governmental function" exception. *Id.* at 952–53.

Judge Becker also found *Chevron's* second prong was not met by *Garcia.* "I believe that non-retroactive application of *Garcia* results in the unseemly spectacle of the court's deciding this case under a preexisting analytical framework that the Supreme Court has found to be unsound in principle and unworkable in practice." *Id.* at 954. In response, we simply point out that whatever the failings of the former rule, precipitate application of the new one presents its own difficulties.

Plaintiffs also rely on *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed. 2d 649 (1987), which held that a new rule of criminal procedure is to be applied retroactively to all pending cases, state or federal. Plaintiffs argue that *Griffith's* holding should govern the retroactive application of rules announced in civil cases as well. This claim is utterly baseless. In a footnote to its *Griffith* opinion, the Supreme Court expressly states that the area of civil retroactivity "continues to be governed by the standard announced in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07 [92 S.Ct. 349, 355, 30 L.Ed.2d 296] (1971)." 479 U.S. at 322 n. 8, 107 S.Ct. at 713 n. 8.

Because we are persuaded that the City of Bisbee is not liable to its police officers for overtime accrued before *Garcia* overruled *National League of Cities,* we affirm the grant of summary judgment against Officer Gojkovich, and against Officer Austin for those hours he claims prior to February 19, 1985, the date *Garcia* was decided.

## II. *Retroactivity of the 1985 Amendments to FLSA.*

■ The question remains, however, whether Officer Austin is entitled to overtime compensation for his on-call time between February 19, 1985 and April 6, 1985, the last date for which he claims compensation. Our decision hinges on Congress's authority to "step into previously-filed litigation and terminate a party's substantive rights." *Kartevold,* 625 F.Supp. at 1562.

Nine months after the Supreme Court decided *Garcia,* Congress, concerned about the burden states and municipalities would

face if suddenly held accountable for overtime under the FLSA, amended the Act to exempt them from compliance until April 15, 1986.[3] Act of Nov. 13, 1985, Pub.L. No. 99–150, 99 Stat. 787, 1985 U.S.Code Cong. & Admin.News 651. The district court found that these amendments disposed of Austin's claim to back pay for time spent on-call during the weeks between *Garcia*'s issuance on February 19 and April 6, 1985. We agree.

Because the amendments followed *Garcia* by nine months, a "window" of liability exists between February and November 1985 unless the statute's protection from liability may be extended retroactively to *Garcia*'s date of decision. Congress obviously intended retroactivity. It dated the onset of liability one year from the issuance of *Garcia*'s mandate on April 15, 1985 (when the petition for rehearing was denied, 471 U.S. 1049). Also, the Senate Report's arguments for protecting states and localities from the hardship of FLSA compliance apply with equal force before and after November 1985.

> [I]t is essential that the particular needs and circumstances of the States and their political subdivisions be carefully weighed and fairly accommodated. As the Supreme Court stated in *Garcia*, "the States occupy a special position in our constitutional system." Under that system, Congress has the responsibility to ensure that federal legislation does not undermine the States' "special position" or "unduly burden the States."
>
> ... [I]n the wake of *Garcia*, the States and their political subdivisions have identified several respects in which they would be injured by immediate application of the FLSA. This legislation responds to these concerns by adjusting certain FLSA principles with respect to employees of states and their political subdivisions and by deferring the effective date of certain provisions of the

FLSA insofar as they apply to the States and their political subdivisions.

> The Committee recognizes that the financial costs of coming into compliance with the FLSA—*particularly the overtime provisions of section 7*—are a matter of grave concern to many states and localities.... [T]he Committee concludes that states and localities required to comply with the FLSA will be forced to assume additional financial responsibilities which in at least some instances could be substantial.

S.Rep. No. 159 at 7–8, *reprinted in* 1985 U.S.Code Cong. & Admin.News 651, 655–56 (emphasis added).

The retroactive application of a federal statute (other than an ex post facto law or a bill of attainder) is not forbidden under the Constitution so long as due process requirements are met. *Matter of Reynolds*, 726 F.2d 1420, 1422 (9th Cir.1984). Here, retroactive application is permissible unless *Garcia* bestowed upon employees engaged in traditional functions a property interest in overtime that the 1985 amendments deprived them of without due process. *See O'Quinn v. Chambers County, Texas*, 636 F.Supp. 1388, 1390 (S.D.Tex. 1986). In the case at bar, the "overtime" had been performed and suit for its compensation had been commenced by Austin prior to the effective date of the amendments. We nonetheless find that in this instance Austin was not deprived of a right without due process.

### A. Property Right

■ Austin has two potentially cognizable property interests: overtime compensation and the cause of action he filed on November 6, 1985. A cause of action is a "species of property protected by the Fourteenth Amendment's Due Process Clause." *In re Consolidated U.S. Atmospheric Testing Litigation*, 820 F.2d 982, 988 (9th Cir.1987) (citation omitted), *cert. denied*

---

**3.** Section 2(c) provides:
> No State, political subdivision of a State, or interstate governmental agency shall be liable under section 16 of the Fair Labor Standards Act of 1938 for a violation of ... such Act occurring before April 15, 1986, with respect

to any employee of the State, political subdivision, or agency who would not have been covered by such Act under the Secretary of Labor's special enforcement policy on January 1, 1985.

*sub nom. Konizeski v. Livermore Labs,* —— U.S. ——, 108 S.Ct. 1076, 99 L.Ed.2d 235 (1988). However, "it is inchoate and affords no definite or enforceable property right until reduced to final judgment." *Id.* at 989. Thus Austin perfected no right in his cause of action before the amendments were passed.

■ Nor does he possess a vested right to overtime compensation. "Property rights to public benefits are defined by the statutes or customs that create the benefits. When, as here, the statute authorizing the benefits is amended or repealed, the property right disappears." *Jones v. Reagan,* 748 F.2d 1331, 1338–39 (9th Cir.1984) (citation omitted). Here, Congress has amended the FLSA, by which it had conferred overtime rights on public employees, to withhold those rights from employees in traditional jobs until April 15, 1986.

Furthermore, the 1985 amendments did not legislatively deprive public employees of longstanding rights or settled expectations. For at least nine years, dating from the *National League of Cities* decision up until the decision in *Garcia,* police had no expectation of overtime compensation. Even then, *Garcia* itself did not create any rights, it merely gave force to rights created by Congress. *See Jones v. Reagan,* 748 F.2d at 1338; *Kartevold,* 625 F.Supp. at 1562.

B. Due Process

■ Even if Austin had a cognizable property right to overtime compensation his claim fails on due process grounds.

The FLSA is one of myriad "legislative Acts adjusting the burdens and benefits of economic life." *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1976). Such legislation "come[s] to the Court with a presumption of constitutionality, and ... the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." *Id.* "[T]he strong deference accorded legislation in the field of national economic policy is no less applicable when that legislation is applied retroactively."

*Pension Benefit Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 729, 104 S.Ct. 2709, 2717, 81 L.Ed.2d 601 (1984). Retroactive application of economic legislation meets the test of due process simply if "retroactive application of the legislation is itself justified by a rational legislative purpose." *Id.* at 730, 104 S.Ct. at 2718.

The rational legislative purpose behind the amendments is manifestly clear in the legislative history quoted above. As the Committee Report explained: "The Committee has deferred application of the FLSA overtime provisions until exactly one year after the mandate in *Garcia* so that state and local governments may make necessary adjustments in their work practices, staffing patterns, and fiscal priorities." S.Rep. No. 159, 99 Cong. 1st Sess. 15, 1985 U.S.Code Cong. & Admin.News at 663. We thus find that Congress did not violate Austin's due process rights. By acting to ease the transition for governments newly obliged to restructure their salary and compensation arrangements in conformance with the FLSA, Congress had a rational and legitimate purpose in enacting the amendments.

At least two other courts have found the 1985 Amendments to apply retroactively. *Kartevold,* 625 F.Supp. at 1559–62; *O'Quinn,* 636 F.Supp. 1388; *see also Wong v. City of New York, Human Resources Admin.,* 641 F.Supp. 588, 591 n. 2 (S.D.N.Y.1986). *But see Thurmond v. City of Union City, Tenn.,* 628 F.Supp. at 148 (1985 amendments' protection from liability extends only from date amendments were passed until April 15, 1986). We agree with the *Kartevold* court's conclusion:

> One might reasonably ask whether the power of Congress, plenary as it is in exercising authority under the Commerce Clause, is adequate to step into previously-filed litigation and terminate a party's substantive rights. Given the unique aspects giving rise to this case, the Court concludes that Congress does have such power.

*Kartevold,* 625 F.Supp. at 1562. Thus we find Austin's claim for overtime compensation between February 19, 1985 and April

6, 1985 is barred by the 1985 amendments to the FLSA.

Finally, the district court alternatively found that, even if appellants should prevail on the retroactivity arguments, the uncontroverted facts as to the nature of on-call status did not establish a valid claim for overtime compensation under the FLSA. Because we find appellants' claims precluded by the nonretroactivity of *Garcia* and the retroactivity of the 1985 FLSA amendments, we need not consider this finding.

## CONCLUSION

The City of Bisbee's request for attorney's fees and costs under Fed.R.App.P. 38 is denied. The district court's order granting summary judgment to the City of Bisbee is AFFIRMED.