Richard T. KOPEC, Plaintiff,

v.

The CITY OF ELMHURST, and the Board of Fire and Police Commissioners of the City of Elmhurst, Defendants.

No. 96 C 2585.

United States District Court,
N.D. Illinois,
. Eastern Division.

June 18, 1998.

Paul V. Esposito, Michael J. Lybrook, Lewis, Overbeck & Furman, Chicago, IL, for Plaintiff.

Richard T. Kopec, Elmhurst, IL, pro se.

Jeffrey B. Huebsch, William W. Ranard, Kubiesa & Power, Ltd., Barbara J. Gosselar, Kubiesa, Spiroff, Gosselar & Pieper, P.C., Oakbrook Terrace, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

LEVIN, United States Magistrate Judge.

Plaintiff, a prospective candidate for a full-time police officer position with Defendants, sues Defendants, alleging violation of the Age Discrimination and Employment Act, 29 U.S.C. § 621 et seq. Pending is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, this court grants Defendants' motion.

1. Although the Chief of Police of the City had authority to appoint Kopec to a part-time police officer position, only the Board had authority to appoint full-time police officers. (Def.12(m) ¶ 10, Pl. 12(n) Resp. ¶ 10.)

2. In addition, after receiving an offer, the candidate must successfully pass a psychological and

## PERTINENT BACKGROUND

Plaintiff Richard Kopec ("Kopec") was born on July 17, 1949. (Def.12(m) ¶ 1; Pl. 12(n) Resp. ¶ 1.) In July of 1985, upon appointment by the Chief of Police of Defendant City of Elmhurst (the "City"), Kopec began working as a part-time or auxiliary police officer with the City. (Def.12(m) ¶ 10; Pl. 12(n) Resp. ¶ 10; Pl. 12(n) Add. Facts ¶ 41; Def. 12(n) Reply ¶ 14.)

On October 16, 1994, while still a part-time police officer, Kopec, then 45 years of age, began the process of applying for a position as a full-time Elmhurst police officer. (Def.12(m) ¶ 11, Pl. 12(n) Resp. ¶ 11; Pl. 12(n) Add. Facts ¶ 42; Def. 12(n) Reply ¶ 42.) Elmhurst appoints eligible applicants to the police department through Defendant Board of Fire and Police Commissioners of the City of Elmhurst (the "Board"). (Def.12(m) ¶¶ 6, 10; Pl. 12(n) Resp. ¶¶ 6, 10.)[1] The Board, an instrumentality of the City which derives its powers pursuant to the laws of the State of Illinois, consists of three individuals appointed by the Mayor. (Def.12(m) ¶¶ 3, 6; Pl. 12(n) Resp. ¶¶ 3, 6.)

Pursuant to the application process, Kopec successfully completed the minimum requirements for a physical agility and written tests. (Def.12(m) ¶¶ 12–13; Pl. 12(n) Resp. ¶¶ 12–13; Pl. 12(n) Add. Facts ¶¶ 43–44; Def. 12(n) Reply ¶¶ 43–44.) After "veteran's preference points" were added, Kopec qualified on the "final" eligibility list to continue with the testing process. (Def.12(m) ¶ 13; Pl. 12(n) Resp. ¶ 13.) By letter dated May 26, 1995, the Board advised Kopec that he had successfully completed the polygraph examination phase. (Pl.12(n) Add. Facts ¶ 45; Def. 12(n) Reply ¶ 45.)

Following the posting of the final eligibility list and the polygraph examination, candidates must successfully complete a background check and an individual oral interview prior to an offer of employment. (Def.12(m) ¶ 8; Pl. 12(n) ¶ 8.)[2] It was at this point that Kopec's candidacy hit some snags.[3]

medical examination (including drug testing). (Def.12(m) ¶ 8; Pl. 12(n) Resp. ¶ 8.)

3. What these snags were and whether these snags were evidence of age discrimination on the part of the City and/or the Board were extensively argued in the parties' summary judgment briefs. Because this court finds that this matter may be disposed of on a legal ground raised by

On August 7, 1995, Kopec met with the Board. (Def.12(m) ¶ 14; Pl. 12(n) Resp. ¶ 14; Pl. 12(n) Add. Facts ¶ 55; Def. 12(n) Reply ¶ 55.) At that time, Kopec was told that he had not provided sufficient proof of his college credit. (*Id.*)[4] By letter dated August 24, 1995, the Board determined, after consulting with a City attorney, that Kopec *had* sufficiently demonstrated that he had met the minimum college credit requirements and that, therefore, Kopec could continue testing. (Def.12(m) ¶ 15; Pl. 12(n) Resp. ¶ 15, Ex. 6; Pl. 12(n) Add. Facts ¶ 70; Def. 12(n) Reply ¶ 70.)

After the background investigation was completed, Kopec appeared for an oral interview with the Board on September 5, 1995. (Def.12(m) ¶ 16; Pl. 12(n) Resp. ¶ 16; Pl. 12(n) Add. Facts ¶ 73; Def. 12(n) Reply ¶ 73.) By letter dated September 6, 1995, the Board notified Kopec that he had not passed the oral interview and that his name would be removed from the eligibility list. (Def.12(m) ¶ 17; Pl. 12(n) Resp. ¶ 17.)

Kopec requested an opportunity to be heard and, on October 2, 1995, the Board reconvened and considered what Kopec offered in support of his conclusion that he should have passed the oral interview. (Def.12(m) ¶ 18; Pl. 12(n) Resp. ¶ 18.) By letter dated October 4, 1995, the Board notified Kopec, then 46 years of age, that it declined to change its original decision to remove his name from the eligibility list. (Def.12(m) ¶ 19; Pl. 12(n) Resp. ¶ 19.)

By letter dated November 20, 1995, the City advised the United States Equal Employment Opportunity Commission of the various alleged grounds for the Board's refusal to hire Kopec. (Def.12(m) ¶ 22; Pl. 12(n) Resp. ¶ 22; Pl. 12(n) Add. Facts ¶ 75; Def. 12(n) Reply ¶ 75; Pl.Ex. 12.)

On April 30, 1996, Kopec filed his complaint in this action. Kopec alleges that Defendants violated the Age Discrimination and Employment Act, 29 U.S.C. § 621 *et seq.* (the "ADEA") in refusing to hire him. Presently pending before the court is Defendants' motion for summary judgment.

---

Defendants, as discussed *infra*, which does not depend on a detailed analysis of these facts, the court will only set forth a limited description of the facts regarding the "snags" here.

### SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial. *LINC Fin. Corp. v. Onwuteaka,* 129 F.3d 917, 920 (7th Cir.1997).

In deciding a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nevertheless, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also LINC,* 129 F.3d at 920. A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson,* 477 U.S. at 247, 106 S.Ct. 2505, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

### ANALYSIS

In support of their motion for summary judgment, Defendants argue that Plaintiff cannot prove a prima facie case of discrimination under the ADEA and that, even if he could, Defendants had non-pretextual legitimate, nondiscriminatory reasons for not hir-

---

4. The rules of the Board require that each candidate have earned 30 semester hours of college credit from an accredited institution. (Def.12(m) ¶ 9; Pl. 12(n) ¶ 9, Ex. 1 § VIII ¶ 4.)

ing him. Further, Defendants argue that an age ceiling provision in the ADEA regarding law enforcement officers exempts Plaintiff from protection under the ADEA. This court finds that Defendants' argument that the law enforcement officer provision of the ADEA exempts Plaintiff's claim is dispositive in Defendants favor. Accordingly, the court finds it unnecessary to address whether Plaintiff's ADEA claim is otherwise sufficient to survive summary judgment.

## I. *THE ADEA EXEMPTS PLAINTIFF'S CLAIM.*

The ADEA, originally enacted by Congress in 1967, generally prohibits the discharge of employees on the basis of age. *See* 29 U.S.C. § 623(a). In 1974, Congress amended the ADEA to include state and local governments within the definition of "employer." *See* 29 U.S.C. § 630(b), (f). In 1983, the Supreme Court upheld the constitutionality of this extension of federal regulation in *EEOC v. Wyoming,* 460 U.S. 226, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), and the EEOC began an enforcement effort targeting public employees mandatory retirement laws.

In response to reaction from state and local governments, Congress, in 1986, enacted a seven year grace period in which bona fide age-restricted hiring and retiring of firefighters and law-enforcement officers would be exempted from ADEA coverage if carried out in accordance with applicable state or local age restrictions as of March 3, 1983 (the date of the *Wyoming* decision). *See* 29 U.S.C. § 623(j) (originally codified as 29 U.S.C. § 623(i)). This 1986 statutory firefighter and law-enforcement officer exemption expired by its own terms on December 31, 1993.

In 1996, Congress re-enacted the firefighter and law-enforcement officer age exemption to the ADEA (the "1996 Amendment") retroactive to the prior expiration date, December 31, 1993.[5] As is pertinent here, the subject exemption entitled "Employment as firefighter or law enforcement officer" (and codified at 29 U.S.C. § 623(j)) states:

It shall not be unlawful for an employer which is a State [or] a political subdivision of a State ... to fail to refuse to hire ... any individual because of such individual's age if such action is taken—

(1) with respect to the employment of an individual as a firefighter or as a law enforcement officer ... and the individual has attained—

(A) the age of hiring ... in effect under applicable State or local law on March 3, 1983;

\* \* \* \* \* \*

and

(2) pursuant to a bona fide hiring or retirement plan that is not a subterfuge to evade the purposes of this chapter.

*See* Pub.L. 104–208, 110 Stat. 3009–23 (codified in 29 U.S.C. 623(j)).

Defendants argue that the ADEA, as amended by the 1996 Amendments, precludes Plaintiff's claim to any protections under the ADEA. The court agrees. Here, Defendants have refused to hire Plaintiff, who was already 45 at the time of his application, to a full-time law enforcement officer position. Plaintiff does not dispute that applicable Illinois law, as of March 3, 1983, prohibited the hiring of law enforcement officers older than thirty-five. In the case presented, pursuant to the express terms of 29 U.S.C. § 623(j)(1)(A), Defendant's action in refusing to hire Plaintiff was not unlawful.

## II. *PLAINTIFF'S ARGUMENTS THAT HIS ADEA CLAIM IS NOT EXEMPTED ARE UNAVAILING.*

In response to the argument that Plaintiff's claim is exempted under the ADEA, Plaintiff seeks to counter with three arguments. Plaintiff argues that: (1) he has an ADEA claim regardless of the retroactive application of the 1996 congressional amendment; (2) Defendants have not demonstrated that their hiring plan is "bona fide" as required by 29 U.S.C. § 623(j)(2); and (3) Congress's retroactive application of the 1996 Amendment is improper.

### A. *PLAINTIFF'S CLAIM FALLS UNDER THE LAW ENFORCEMENT EXEMPTION TO THE ADEA.*

Plaintiff's initial contention is that his claim does not fall within the ADEA law

---

5. *See* Pub.L. 104–208, 110 Stat. 3009–25.

enforcement officer exemption. Relying on legislative history, Plaintiff first contends that Congress did not intend the 1996 Amendment to be a "mandate for age-based restrictions." Second, Plaintiff argues that the 1996 Amendment should not apply because, at the time he filed his application in 1994, neither Illinois law nor Defendants' local rules contained age-based hiring restrictions.

### 1. The ADEA's Clear Language Obviates Consideration of Legislative History.

■ Relying on asserted legislative history,[6] Plaintiff argues that the 1996 Amendment "is not a mandate for age-based restrictions" but instead was "an invitation to state and local governments to consider whether bona fide restrictions are appropriate under prevailing local conditions." (Pl. Surresp. at 4–5.)

This court finds it unnecessary and improper to consider the legislative history averred by Plaintiff here. When courts interpret statutes, the initial inquiry is the language of the statute itself. *United States v. James*, 478 U.S. 597, 604, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986); *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). If the language on the face of the statute is clear and unambiguous, courts will not look to legislative history to determine the intent of Congress. *Barnhill v. Johnson*, 503 U.S. 393, 401–02, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992); *In re McFarland*, 84 F.3d 943, 947 (7th Cir.1996).

Here, there is nothing ambiguous about the effect of the ADEA on Plaintiff's claim.

The ADEA directs this court to look at state or local law as of March 3, 1983 to consider whether Defendants' refusal to hire Plaintiff was unlawful. *See* 29 U.S.C. § 623(j). Because there is no ambiguity in the language of the statute at issue, this court declines to consider the statute's legislative history asserted.[7]

### 2. Plaintiff's Reliance on State and Local Law Is Not Apt.

■ Plaintiff additionally argues that because both Illinois law and Defendants' local rules had "abandoned" age hiring restrictions at the time Defendants refused to hire Plaintiff in 1995, his claim is viable, *i.e.*, the 1996 Amendment could not "magically revitalize" the "abandoned" age restrictions. (Pl. Surresp. at 5–6.)

Plaintiff's reliance on state and local law as it existed at the time he applied for a full-time police officer position (*i.e.*, October 1994 to October 1995), however, is unavailing. Although Plaintiff correctly notes that, at that time, both Illinois law and Defendants' local rules had dropped their maximum age hiring restrictions, Plaintiff's claim rests on *federal law*, the ADEA. As to refusals to hire at the time Plaintiff was rejected by Defendants here, the relevant ADEA provision here explicitly looks to state law as of a *specific date*, March 3, 1983. Thus, any later fluctuation of state law is irrelevant to Plaintiff's claim.[8]

### B. DEFENDANTS' HIRING PLAN IS "BONA FIDE."

In order for an age restricted hiring plan regarding law enforcement officers to be le-

---

**6.** *See* Hearings on S. 553 and H.R. 849 before the Committee on Labor and Human Resources of the Senate, 104th Cong., 2d Sess. 30, 32 (March 8, 1996) (statement of sponsoring Senator Carol Moseley–Braun).

**7.** Parenthetically, this court also does not consider the legislative history averred by Plaintiff to be inconsistent with the clear declaration of the statute. The 1996 Amendment provided that hiring and firing decisions undertaken *after* the 1996 Amendment would be considered under applicable state or local law (as to state or local age restrictions) enacted *after* September 30, 1996. *See* 29 U.S.C. § 623(j)(1)(B). Thus, the Plaintiff's cited statement(s) of Senator Carol Moseley–Braun, *inter alia*, that the 1996 amending legislation "gives state local governments the flexibility to make their appropriate decisions,"

is reasonably construable as being directed only at hiring and firing decisions first undertaken *after* the 1996 Amendment (and not at earlier 1995 hiring decisions like here).

**8.** Plaintiff's argument would also be flawed, in any event, because Illinois has now reinstated the maximum hiring age of 35 for firefighters and law enforcement officers. *See* 65 ILCS 5/10–2.1–6. If, *arguendo* under 29 U.S.C. § 623(j)(1)(B), this court was going to defer to state law on this issue, it would be constrained to apply that present law and the current 35 year old age ceiling. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 273, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (quoting *Bradley v. School Bd. of Richmond*, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974)) ("A court 'is to apply the law in effect at the time it renders its decision' even

gal under the ADEA, not only must the individual have attained the age of hiring in effect under applicable state law on March 3, 1983, but the action must have been taken "pursuant to a bona fide hiring ... plan that is not a subterfuge to evade the purposes" of the ADEA. *See* 29 U.S.C. § 623(j)(2). Plaintiff alleges that Defendants have not demonstrated that their hiring plan is "bona fide" and was not a "subterfuge" to evade the purposes of the ADEA.

■ Plaintiff asserts that, to determine whether Defendants have a "bona fide hiring ... plan that is not a subterfuge to evade [the ADEA]," it must be established that Defendants' hiring plan meets the specific fact-based test for the general ADEA exemption for age-based "bona fide occupational qualifications" (a.k.a."BFOQ"). Respectfully, Plaintiff's argument is off point. Although, generally, age must be factually established as a BFOQ for hiring plans to be valid under the ADEA, *see* 29 U.S.C. § 623(f)(1), Congress has expressly and specifically adopted a clear mandatory age ceiling exemption with respect to firefighters and law-enforcement officers, *see* 29 U.S.C. § 623(j). Put differently, Congress by enacting the aforedescribed 1986 and 1996 amendments to the ADEA has expressly and specifically declared that the maximum hiring age established by the State of Illinois in 1983 (here 35) is a bona fide occupational qualification here for police officers as a matter of law. "The 1986 [and 1996] ADEA amendment[s] provide[ ] relief by exempting [hiring] plans for police officers that were in effect on March 3, 1983, thus making it unnecessary for state and local governments to prove that age was a BFOQ for police work." *McCann v. City of Chicago*, Nos. 89 C 2879, 90 C 464, 1991 WL 2537, at *3 (N.D.Ill. Jan. 8, 1991).

Also, there is no evidence whatsoever here, in fact, that Defendants' hiring plan was an effort to evade the purposes of the ADEA. If anything, Defendants' plan—which contains particular localized standards for hiring candidates pursuant to a series of testing elements, *see* Pl. 12(n) Ex. 1—appears to be an attempt to comply with the requirements of law. *See McCann v. City of Chicago*, No. 89 C 2879, 1990 WL 70415, at *4 (N.D.Ill. May 3, 1990) (holding that defendant city's pre-ADEA mandatory retirement plan did not constitute a "subterfuge" pursuant to § 623(j)(2)).

### C. THE RETROACTIVE APPLICATION OF THE 1996 AMENDMENT IS NOT IMPROPER.

In determining whether to apply a law enacted after the events in suit retroactively or prospectively, "the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). "If Congress has done so, of course, there is no need to resort to judicial default rules." *Id. See also Gay v. Sullivan*, 966 F.2d 1124, 1127 (7th Cir.1992) ("[I]f congressional intent [regarding retroactive effect of statute] is clear, then it is controlling."). Here, the parties agree that Congress clearly expressed its intent that the 1996 Amendment be applied retroactively as of December 31, 1993. (Pl. Surresp. at 4; Def. Surreply at 2.)

Plaintiff advances two arguments attacking the legitimacy of the retroactive application of the current ADEA statute. First, Plaintiff argues that applying the current ADEA statute retroactively would violate the Fifth Amendment. Second, Plaintiff argues that application of the current ADEA statute will improperly cause him "manifest injustice."

#### 1. Retroactive Application of the Current ADEA Statute Does Not Violate the Fifth Amendment.

Plaintiff asserts that "[i]f the 1996 amendment retroactively strips plaintiff of his claim for relief, it violates the Fifth Amendment." (Pl. Surresp. at 12.) This court disagrees.[9]

though that law was enacted after the events that gave rise to the suit.").

**9.** To the extent that Plaintiff argues that the retroactive application of the 1996 Amendment violates the Takings Clause of the Fifth Amend-

ment, that argument cannot be accepted. The Takings Clause prohibits the taking of private property "for public use, without just compensation." U.S. Const. amend. V. The fact that Plaintiff lost his lawsuit claim does not qualify as a taking, *see Concrete Pipe and Products of Ca.,*

■ To allege a due process violation of the Fifth Amendment, Plaintiff must first establish that he has an impaired property right. Stripped to its essence, Plaintiff's argument is that "the impact of the 1996 amendment would be to retroactively strip plaintiff of his claim of age discrimination, a claim which accrued over one year prior to the enactment of the 1996 amendment." (Pl. Surresp. at 12.)

Plaintiff's proclaimed right to bring his ADEA claim, however, is not a "vested" property right. Courts have consistently held that a mere legal claim affords no enforceable property right until a final judgment has been obtained. *See, e.g., Sowell v. American Cyanamid Co.*, 888 F.2d 802, 805 (11th Cir.1989) ("The fact that the statute is retroactive does not make it unconstitutional as a legal claim affords no definite or enforceable property right until reduced to a final judgment."); *Cooperativa de Ahorro y Credito Aguada v. Kidder, Peabody & Co.*, 993 F.2d 269, 273 n. 11 (1st Cir.1993) (party's property right to statutorily based cause of action would not vest "until a final, unreviewable judgment has been obtained"); *Arbour v. Jenkins*, 903 F.2d 416, 420 (6th Cir.1990) (same); *Austin v. City of Bisbee*, 855 F.2d 1429, 1435 (9th Cir.1988) (same); *In re TMI*, 89 F.3d 1106, 1113 (3rd Cir.1996) (pending tort claim does not constitute a vested right).

Nor did Plaintiff have a "vested" right in the continuance of the pre-1996 Amendment ADEA statute. "No person has a vested right in any general rule of law or policy of legislation entitling him to insist that it remain unchanged for his benefit." *Chicago & Alton R.R. v. Tranbarger*, 238 U.S. 67, 76, 35 S.Ct. 678, 59 L.Ed. 1204 (1915). *See also Bricklayers Union Local 21 v. Edgar*, 922 F.Supp. 100, 106 (N.D.Ill.1996) ("A statute is not a commitment to the legislature never to repeal the statute."). Because the retroactive application of the 1996 Amendment does not impair a vested right of Plaintiff, it does not violate the Fifth Amendment.

■ Even, *arguendo*, if Plaintiff's cause of action could somehow be considered a vested property interest, the 1996 Amendment would not violate the Due Process Clause because it survives the rational basis test. Courts addressing whether retroactive legislation that either abolishes or substantially affects a plaintiff's pending cause of action comports with due process have reviewed such legislation on a 'rational basis' standard. *See, e.g., In re TMI*, 89 F.3d at 1113; *Konizeski v. Livermore Labs.*, 820 F.2d 982, 991 (9th Cir.1987); *In re Consolidated U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 990–91 (9th Cir.1987); *Hammond v. United States*, 786 F.2d 8, 13 (1st Cir.1986).

An "act of Congress comes to us clothed with a presumption of constitutionality, and the burden is on the plaintiff to show that it violates due process." *Konizeski*, 820 F.2d at 989–90. *See also Dotson v. Shalala*, 1 F.3d 571, 580 (7th Cir.1993) (stating that, to establish a due process violation, plaintiff "faces the well-settled and formidable burden" of proving regulations lacked a rational basis). Here, Plaintiff has not met his burden of demonstrating that Congress's retroactive application of the 1996 Amendment to the ADEA did not have a legitimate legislative purpose.

Congress first enacted the public safety exemption to the ADEA in 1986, and the exemption expired in 1993. The legislative history offered by Plaintiff demonstrates that Congress's re-enactment of that exemption in 1996 clearly had a rational basis:

> This legislation provides a necessary, narrow and appropriate exemption from the [ADEA] for state and local public safety officers, necessary and appropriate because numerous medical studies have found that age directly affects an individual's ability to perform the duties of a public safety officer.

*See* Hearings on S. 553 and H.R. 849 before the Committee on Labor and Human Resources of the Senate, 104th Cong., 2d Sess. 30 (March 8, 1996) (statement by Senator Carol Moseley–Braun). And Plaintiff, who has the burden here, has not explained in any way how Congress's decision to "close the gap" by making its 1996 re-enactment of

---

*Inc. v. Construction Laborers Pension Trust*, 508 U.S. 602, 644–46, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993), and the 1996 Amendment does not

take anything from Plaintiff for a "public use," in any event.

the exemption retroactive to the earlier identical age exemption from 1986 to 1993 lacked a legitimate legislative purpose.

In sum, because Congress's decision to apply the 1996 ADEA Amendment retroactively did not impair a vested right of Plaintiff (and Plaintiff has not met his burden of demonstrating that such retroactive application lacked a rational basis, in any event), such retroactive application of the 1996 Amendment cannot be said to have violated Plaintiff's right to due process of law.

## 2. Manifest Injustice Will Not Result from Applying the Current ADEA Law.

■ Generally speaking, "a court 'is to apply the law in effect at the time it renders its decision' even though that law was enacted after the events that gave rise to the suit." *Landgraf,* 511 U.S. at 273, 114 S.Ct. 1483 (quoting *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974)). Nevertheless, courts need not apply the law in effect at the time it renders its decision if application of that law "would result in manifest injustice." *Bradley,* 416 U.S. at 711, 716, 416 U.S. 696. Plaintiff argues that such "manifest injustice" will result herein if the court applies the present ADEA law to his case.

Three factors are relevant to the consideration of whether "manifest injustice" would result in the application of the presently constituted ADEA statute. *See Bradley,* 416 U.S. at 717, 94 S.Ct. 2006; *Federal Deposit Ins. Corp. v. Wright,* 942 F.2d 1089, 1096 (7th Cir.1991). First, a court should consider the nature and identity of the parties, appreciating that injustice will more likely result in "mere private cases between individuals." *Bradley,* 416 U.S. at 717, 94 S.Ct. 2006; *Wright,* 942 F.2d at 1096. On the other hand, "[n]ational concerns and public parties encourage retroactive application of the legislation at issue." *Wright,* 942 F.2d at 1096 (quoting *Seniors United for Action v. Ray,* 675 F.2d 186, 189 (8th Cir.1982)).

This first factor fully militates against a finding of manifest injustice here because this is not simply a private case between individuals. Instead, the case involves a non-

hiring of Plaintiff as a public police officer based, as framed in the present motion, on a statutorily declared public safety age ceiling. Defendant "public parties" are a city and an official police and fire commission of the city and, as Plaintiff concedes, "public interests are involved." (Pl. Surresp. at 12.)

According to the second factor, a court should consider whether application of the law would infringe upon or deprive a person of a right that had "matured" or become "unconditional." *Bradley,* 416 U.S. at 720, 416 U.S. 696; *Wright,* 942 F.2d at 1096. Similarly, under the third factor, the court should consider the impact of the changing law upon existing rights. *Id.* These two factors also weigh against Plaintiff here. As explained, *supra,* Plaintiff's affected cause of action that has not been reduced to a final judgment is not a "matured" or "unconditional" right and does not impact on any existing vested right of Plaintiff. *See, e.g., Sowell,* 888 F.2d at 805; *Kidder, Peabody & Co.,* 993 F.2d at 273 n. 11; *Arbour,* 903 F.2d at 420; *Austin,* 855 F.2d at 1435; *In re TMI,* 89 F.3d at 1113.

In brief, because Plaintiff's claim involves public concern and public parties (and not a mere private dispute), and application of the present ADEA statute to Plaintiff's claim does not affect a matured or unconditional right, and does not impact on any existing vested right, this court finds that Plaintiff has not met the definitional requirements of manifest injustice.

## 3. Summary.

Where, as here, legislation does not violate one of several "specific provisions" of the Constitution, "the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope." *Landgraf,* 511 U.S. at 267, 114 S.Ct. 1483.[10] Therefore, although the unfortunate result of the passage of the 1996 Amendment to the ADEA was that Plaintiff lost his present cause of action, this court is constrained to find that Congress's clear intent to apply the 1996 Amendment retroactively was not improper under law here.

---

**10.** The same reasoning applies to the manifest    injustice contention of the Plaintiff.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted, and Plaintiff's lawsuit is dismissed with prejudice.